No. 2767.

B. F. Dodson *v.* The State.

Incest—Accomplice Testimony—Fact Case.—See the statement of the case for evidence *held* to be insufficient to support a conviction for incest, inasmuch as it rests upon the uncorroborated testimony of a witness shown by the other proof to be a particeps criminis.

Appeal from the District Court of Wood. Tried below before the Hon. F. J. McCord.

The appellant in this case was convicted of incest with one Rosa Brower, his step-daughter, and his penalty was assessed at a term of two years in the penitentiary.

Rosa Brower, the first witness for the State, testified that she was nineteen years old, and lived in Wood county, Texas, with her mother and the defendant, who was her step-father. In the room occupied by the witness in the defendant's house, there were three beds. One of them was occupied by the defendant and his wife and child. The witness and a young sister occupied the next bed, which was near the one occupied by defendant and his wife. The third bed was occupied by the defendant's widowed brother and some of his children. About midnight on the night of March 15, 1887, the defendant left his bed and came to that of the witness. He placed his hand on witness's shoulder. Witness pushed his hand off and told him to go away. Instead of going away the defendant got into bed with witness, and had carnal intercourse with her without her consent. He held witness securely in bed, and directed her not to speak a word. Defendant repeated that operation in the same manner at the same place on several subsequent nights. Witness at no time made an outcry, being restrained by fear of the defendant. The same fear kept her from telling any person of her compulsory copulation with defendant. She told no one until she gave birth to a child, when she told her mother, and the officers who came to investigate the matter, that the defendant was the father of her child. No man other than defendant had ever had carnal intercourse with the witness. Witness was engaged, at time of the outrage upon her, to be married to one Mose Dumas. They

were to have been married on the Sunday succeeding July 5, 1887, but Mose withdrew; witness did not know why. He had previously broken off a prior engagement with witness to marry, but witness did not know why. The defendant always treated the witness well, except in the matter of forcing her, against her will, to submit to his carnal passion. Witness often attended parties in her neighborhood, and was sometimes escorted by Mose Dumas. Witness spent one or two nights at the house of Ed. Jones during his illness. She denied that Doctor Hardeman ever treated her for cancer of the breast and sore leg. He did examine her breast on one occasion.

The State closed.

Mrs. Agnes Dodson, the wife of defendant, was his first witness. She testified that the prosecutrix, Rosa Brower, was her daughter by her first husband. Witness and defendant were legally married to each other at the time of this alleged offense. Rosa had lived many years with witness and defendant. At the time of the alleged offense, the defendant's brother, —— Dodson, and his motherless boys were living at defendant's house. Defendant and witness and their children, including Rosa, and defendant's brother and his children all occupied the same room. Defendant and witness and one of their children all occupied one bed. Rosa and her sister occupied another bed, and defendant's brother and his children occupied the third bed, which bed was nearer to Rosa's bed than the one occupied by witness and defendant. A person lying in the bed occupied by defendant's brother could touch the foot of Rosa's bed. The older children of the household, except Rosa, slept in a room overhead and immediately above the room occupied by the parties named. The defendant's brother and his children came to defendant's house in February, 1887. He was then, and is yet, a widower. The witness spent almost her entire time at home, rarely leaving home, and never for any considerable length of time. Witness had never observed any undue intimacy between defendant and Rosa, and, had any such intimacy existed, she would most certainly have seen or known it. She had never had any cause to suspect such an intimacy between her husband and her daughter. Rosa never complained to witness of any ill treatment at the hands of defendant until her child was born, when she declared that the defendant was the father of the child. Witness suspected Rosa's pregnancy some time before the birth of the child, but, thinking Rosa would confide her

troubles to her, said nothing to her about the matter. When Rosa reached her period of labor, she awakened witness with her moaning, and asked witness to give her something to relieve her pains. Witness told defendant to get and give her some spirits of turpentine and paregoric. After a labor of some time the child was born. It lived about an hour and a half, and died in the arms of a Mrs. Parker, who was present at the birth. Defendant asked, after the death of the child, if it would not be better to bury the body in the church yard. Mrs. Parker remarked, in reply, that the child, which was a very small one, was no better than the witness's dead child, which was buried in the yard near the house, and that it, too, could be buried in the yard. The child's body was then wrapped in some clean rags and placed in a box, and the defendant then, as he was asked to do, buried it in the yard. The child was only partially developed, was not more than a five months conception, and did not weigh exceeding three or four pounds.

Witness' was at home on the night of March 15, 1887, and every night for a long period before, and ever since that date. She never, on any occasion after the said date, observed anything peculiar or unusual in the demeanor, manner or appearance of her daughter Rosa. The defendant habitually slept behind the witness, and next to the wall, and never did and could not get out of bed after having once retired, without awakening the witness, who was an exceptionally light sleeper. Rosa often attended parties with young men, and during March, 1887, she spent several nights at the house of Ed. Jones, during his illness. She told witness that she was engaged to marry Mose Dumas, and that her marriage was appointed for the Sunday succeeding July 5, 1887. She attended several parties in company with Mose Dumas.

Cross examined, the witness said that she was at home when the officers, Bob Terrell and John James, and county attorney W. A. Hart, came there, which was about a week after the birth, death and burial of Rosa's child. Witness showed the child's grave to the parties named, who exhumed the body and examined it. Witness denied that she told Mr. Hart that the defendant was the father of the child. She denied that she told Hart, Terrell or Jones that, on one occasion, at Mrs. Parker's house, she observed undue familiarity between defendant and Rosa, and afterwards reprimanded defendant about it, and that defendant replied: "It is nothing but your d—d old jealous mouth,

and if you don't hush I will leave the place." She did tell the officers that on one occasion, in March, 1887, about midnight, she caught the defendant getting back into his bed, and that the fire was covered up, and that she told him it looked suspicious. That was not the truth. Witness did not know why she made such a statement to the officers. It just "popped" into her head to tell it. It was the practice of witness to cover up the fire at night. Hart was drinking when he came to witness's house. He showed he was drunk by asking very silly questions, and witness smelled whisky on his breath.

Mrs. Rosa Parker testified, for the defense, that she was at defendant's house when Rosa Brower's child was born. That child was about a five months conception, and was very small. It lived about an hour and a half, and died in witness's arms. Defendant proposed that the child should be taken to the church yard and buried. Witness replied that the child was no better than the child of defendant's wife, which was buried in the yard, and that it should be buried there too. Accordingly, the child was buried in the yard by the defendant. Witness had often seen defendant and Rosa together, but never observed anything suspicious about their manner towards each other.

Doctor Hardeman testified, for the defense, that he had been a practising physician for eighteen years. Witness was several times called to treat Rosa Brower for cancer of the breast and for sore leg. Ed Jones called the defendant to treat the girl, who was then at his house. Witness, after examining Rosa's breast, told her that he would not dry it up, as she was pregnant; to which Rosa made no reply. Rosa's general reputation for both truth and chastity was very bad. Witness had no medical certificate, and was a practitioner without having passed examination before the medical board of Wood county.

G. A. Green testified, for the defense, that he had lived near and had known Rosa Brower all of his and her lives. He knew that Rosa's reputation for truth and veracity and for chastity was very bad and had been bad for about four years. He had always known defendant, and had never heard defendant's moral character assailed until he was charged with this offense. He had often seen defendant and Rosa together, but had never seen any undue intimacy or improper familiarity between them. Cross examined, the witness said that, up to a short time before the birth of her child, Rosa attended all the parties given in the neighborhood. So far as the witness knew, she was never

avoided, snubbed or mistreated. J. J. Bailey and Alex. Fouse testified, for the defense, substantially as did the witness Green. The defense closed.

W. A. Hart testified, for the State, in rebuttal, that in his official capacity as county attorney he went to the defendant's house as soon as he heard of the birth of Rosa Brower's child, and that she imputed its paternity to the defendant. Mrs. Dodson stated to the witness and Terrell that, on one occasion, at Mrs. Parker's house, she observed the defendant and Rosa acting with undue familiarity towards each other, and that she afterwards "got after" defendant about it, when defendant told her it was "nothing but her d—d old jealous mouth, and that, if she did not hush up, he would leave the house." She also said: "On one occasion, about the last of March, I woke and found the defendant getting in bed. The fire was covered up and the house was dark. I asked him what he was doing."

Ed Dumas testified, for the State, that he had lived within two miles of the defendant for about eight years. He knew Rosa Brower well. Her reputation for truth, veracity and chastity had always been good. She attended all parties given in the neighborhood, and appeared to be a social favorite. Witness had never seen her snubbed or slighted by any of the society people.

E. M. Bates testified, for the State, that he had long known Rosa Brower, and had always regarded her as a pure and virtuous girl. She attended all the parties and social gatherings, and always appeared to be a prime favorite.

The motion for a new trial raised the question discussed in the opinion.

*D. W. Crow*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. We are of the opinion that the indictment is sufficient. We find no material error in the charge of the court. But we are clearly of the opinion that the evidence does not support the conviction.

Although the witness Rosa, with whom the incestuous intercourse is alleged to have been committed, states that she did not consent to the intercourse, it is very clear from her testimony that she made no serious, determined or positive resistance to it.

Her testimony, taken in connection with the other facts in evidence, shows conclusively, we think, that if the crime of incest was committed upon her by the defendant, she was a principal in the crime. Her testimony, therefore, was that of an accomplice, and insufficient, without corroboration, to sustain a conviction. There is not a particle of evidence in the record which corroborates, in any material respect, the testimony of the witness Rosa, while, on the other hand, her statements are strongly disproved by circumstances, and her credibility is made doubtful by the testimony of several witnesses who state that her reputation both for veracity and chastity is bad. We think the court erred in refusing to grant the defendant a new trial, upon the ground that the evidence did not support the verdict.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered December 17, 1887.

# COURT OF APPEALS OF TEXAS.

## GALVESTON TERM, 1888.